**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| Karen Schneyer,<br><br>Plaintiff,<br><br>v.<br><br>Capital One, Nat'l Assoc.<br>Equifax Information Services, LLC<br>Experian Information Solutions, Inc.<br>Portfolio Recovery Associates, LLC, and<br>Trans Union, LLC<br><br>Defendants. | ) | Civil Action No. 1:26-cv-02680<br><br>**COMPLAINT**<br>**WITH JURY TRIAL DEMAND** |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Karen Schneyer, files suit against Capital One, National Association ("Capital One"), Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Portfolio Recovery Associates, LLC ("PRA") and Trans Union, LLC ("Trans Union"), she alleges the following:

**JURISDICTION & PARTIES TO ACTION**

1. This action arises out of the Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

2. This Court has jurisdiction under 15 U.S.C. § 1681p.

3. Plaintiff, Karen Schneyer, is a natural person, and is a "consumer" as that term is defined at 15 U.S.C. § 1681a(c).

4. Capital One is an American bank holding company specializing in credit cards and consumer banking. Capital One reports information on its customers to the Credit Reporting Agencies ("CRAs") and is a "furnisher of information" within the meaning of the FCRA, at § 1681s-2.

5. PRA is a debt collector headquartered in Norfolk, Virginia and is one of the largest debt collection companies in the United States. PRA furnishes debtor's information to consumer reporting agencies and is a "furnisher" governed by FCRA at 15 U.S.C. § 1681s-2.

6. Equifax assembles and sells consumer reports to third parties for monetary compensation and uses interstate commerce to furnish the reports. Accordingly, Equifax is a "consumer reporting agency" as that term is defined by FCRA at 15 U.S.C. § 1681a(f).

7. Experian assembles and sells consumer reports to third parties for monetary compensation and uses interstate commerce to furnish the reports. Accordingly, Experian is a "consumer reporting agency" as that term is defined by FCRA at 15 U.S.C. § 1681a(f).

8. Trans Union assembles and sells consumer reports to third parties for monetary compensation and uses interstate commerce to furnish the reports. Accordingly, Trans Union is a "consumer reporting agency" as that term is defined by FCRA at 15 U.S.C. § 1681a(f).

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

9. Consumer credit plays a major role in the lives of American consumers entering into the U.S. marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW (2nd ed. 2006).

10. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

11. The FCRA was created to "ensure fair and accurate credit reporting." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

12. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of faults or incomplete information in a credit report," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)).

13. Senator Proxmire listed 5 types of abuses requiring Congressional response, including biased information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

14. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

15. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing § 1681a(d)).

16. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

17. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were

not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

**FACTUAL ALLEGATIONS**

18. In January of 2026, Ms. Schneyer obtained her credit reports from the CRAs. Within her credit reports were a number ofs inaccuracies, including debts furnished by Austin Capital Bank ("Austin"), Capital One N.A. ("Capital One"), Colony Brands/Montgomery Ward ("MW"), Portfolio Recovery Associates ("PRA") and Synchrony Bank ("SYNCB").

19. Ms. Schneyer sent each CRA a letter that disputed the inaccuracies, and in turn, the CRAs forwarded her dispute to the furnishers.

20. The Austin tradeline was inaccurate and incomplete because it omitted Ms. Schneyer's payment in May 2022. Further, although the account had been paid in full with a zero balance, the balance was not being reported. Austin failed to correct the errors and omissions because it conducted a superficial investigation that did not consider Ms. Schneyer's dispute letter. And the CRAs parroted Austin's dispute results without doing any investigation of their own.

21. The Capital One auto loan tradeline was inaccurate and incomplete because she was reported late on her payments although Ms. Schneyer was never late on the account. In her dispute letters Ms. Schneyer provided a detailed explanation of the cause of the reporting error. But Capital One ignored her dispute letter and simply confirmed its prior furnishings to

the CRAs were being reported verbatim. And the CRAs did nothing but wait for Capital One to send its dispute results so they could simply parrot those results.

22. MW reported Ms. Schneyer had a $92 debt that went unpaid and was charged off. She disputed the $92 balance but paid it anyway to improve her credit profile. However, Ms. Schneyer's credit profile did not improve because her payment was not credited. Specifically, MW and the CRAs either reported the debt remained unpaid or failed to report her $92 payment.

23. PRA is or was reporting a collection account to the CRAs. Ms. Schneyer disputed that she owed PRA but decided to pay PRA to improve her credit profile. Ms. Schneyer had set up a payment plan and was making payments on the debt but PRA and the CRAs reported that no payments were being made on the debt. PRA is an unreliable source of information and the CRAs should never have included the collection in Ms. Schneyer's report in the first place. Following her disputes, the CRAs did not provide dispute results regarding the collection account, so she is unaware whether the collection remains in her report.

24. The SYNCB tradeline was inaccurate and incomplete because it omitted Ms. Schneyer's payment in February 2020. Further, although the account had been paid in full with a zero balance, the balance was not being reported. SYNCB failed to correct the inaccuracies because it conducted a superficial investigation that did not consider Ms. Schneyer's dispute letter. And the CRAs parroted SYNCB's dispute results without doing their own investigation.

25. Several of Plaintiff's creditors and potential creditors requested and received credit reports on Plaintiff from the CRAs. And those reports contained inaccurate information that was disputed by the Plaintiff.

26. As a result of the Defendants' inaccurate reporting and unreasonable investigation(s), Plaintiff has suffered a reduced credit score and profile, emotional distress, frustration, and anxiety constituting actual damages under the FCRA.

## CAUSES OF ACTIONS

### COUNT I
### VIOLATIONS OF THE FCRA 15 U.S.C. § 1681e(b)

27. Defendants Equifax, Experian and Trans Union (collectively, the "CRAs") are required to follow reasonable procedures to assure maximum possible accuracy of the information in any consumer report that they prepare.

28. The CRAs violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained concerning Plaintiff.

29. Equifax violated 15 U.S.C. § 1681e(b) by preparing consumer reports on Plaintiff that inaccurately identified the PRA account as a credit account instead of a collection.

30. On information and belief, Equifax religiously reports collection accounts for certain debt collectors (e.g. PRA) as credit accounts, which implies the debtor obtained and defaulted on an additional loan.

31. Either PRA is reporting to Equifax that its debts are credit accounts, or Equifax is reporting the collection accounts as credit accounts due to a defect in Equifax's software.

32. Regardless, Equifax knows it is inaccurately reporting collection accounts as credit accounts and refuses to implement procedures to correct this well-known reporting error.

33. Equifax believes it can get away with this illegal conduct because the general profile of the affected debtors is marginalized people without the resources to mount a challenge to Equifax.

34. Equifax's deliberate choice to knowingly report inaccurate information was a willful and/or reckless violation of the FCRA

35. As a result of the CRAs' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: harm to her credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

36. The violations by CRAs were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

37. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from the CRAs in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT II**
**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681g**

38. Pursuant to 15 U.S.C. § 1681g(a)(1), CRAs must provide a consumer with all information in the consumer's file upon request from the consumer.

39. Defendant Equifax violated 15 U.S.C. § 1681g(a)(1) by failing to provide the Plaintiff with all information in her file after she requested it.

40. Equifax violated § 1681g(a)(1) by failing to provide Plaintiff with the original creditor name for certain collection accounts.

41. Equifax knows that it is required to report the original creditor's name and its failure to do so will cause consumers not to recognize the account.

42. Notably, the two other national consumer reporting agencies, Experian and Trans Union, have abided by the Consumer Data Industry Association's ("CDIA") edicts and

implemented procedures that assure the original creditor name is included in all collection accounts that appear in their reports.

43. According to the CDIA, the industry leading organization for furnishers and consumer reporting agencies, the "original creditor is required for collection agencies" and "must be present each time the account is reported."

44. Further, the CDIA states the "purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports."

45. Continuing, the CDIA notes that "[w]ithout the original creditor names, consumers may not know what the accounts represent."

46. Upon information and belief, Equifax's failure to disclose the original creditor is due to a defect in Equifax's software that lists collection accounts in the wrong section of the report wherein accounts are displayed in formats for credit accounts that do not have a Metro II field for an original creditor.

47. Equifax continues to knowingly omit the original creditor's name because Equifax does not want to incur the costs of fixing the defect in its software.

48. Equifax has conducted a cost-benefit analysis on whether to incur the costs to fix the error or to apportion a small percentage of those would-be costs to litigating claims brought by aggrieved consumers that fell victim to its conduct.

49. In choosing to litigate rather than correct, Equifax was motivated to adopt and act on an interpretation of section 1681g that gave it grounds to litigate a defense against claims that consumers were bound to bring against Equifax for its intentional violations of the FCRA.

50. Because the language in section 1681g and the obligations of a credit reporting agency that arise from the said language are unambiguous, to give cover to an otherwise

indefensible defense, Equifax had to purposely adopt a reading of § 1681g that contravened the clear objective and instruction of the statute.

51. To achieve its purpose of adopting an interpretation of § 1681g that gave it cover and/or plausible denial, Equifax reads in an accuracy obligation in § 1681g where there is absolutely no language to support such reading.

52. Specifically, while the statute clearly reads "All information in the consumer's file at the time of the request" must be "clearly and accurately disclose[d] to the consumer," § 1681g(a)(1)(A), Equifax claims that § 1681g only covers inaccurate information.

53. The Supreme Court has instructed entities governed by FCRA to steer away from interpretations of the FCRA that have no foundation based in the language of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

54. There is no language in § 1681g to support Equifax's interpretation that § 1681g governs only information that is inaccurate.

55. Further, the Supreme Court has instructed anyone governed by the FCRA to heed the warnings and/or holdings of the circuit courts of appeals when it comes to interpreting duties under the FCRA. And the Second Circuit stated, albeit in an unpublished opinion, that "§ 1681g requires consumer reporting agencies to 'clearly and accurately disclose ... [*a*]*ll* information,' not *all accurate information*." *Selvam v. Experian Information Solutions, Inc.*, 651 Fed. Appx. 29, 33 (2d Cir. 2016) (citing 15 U.S.C. § 1681g(a)) (emphasis in original).

56. The *Selvam* opinion was rendered in 2016, so Equifax has been on notice, from the Second Circuit, that its interpretation of section 1681g(a) was inaccurate for 10 years.

57. Additionally, during that same period, in 2015, Equifax was sued by 30+ state attorney generals for, among other things, failing to report the original creditor. More particularly, as a result of the state attorneys' litigation, Equifax agreed to "revise training

materials and adopt policies and procedures to notify and instruct Collection Furnishers that the name of the Original Creditor … [is a] mandatory reporting requirement[], and [Equifax] shall reject data that is not provided with the name of the Original Creditor."[1]

58. Moreover, Equifax has *direct* knowledge that its decision to omit the identity of original creditors when reporting a collection account is causing serious harm to consumers. In a recent lawsuit in the Middle District of Florida, Equifax admitted that its failure to report the name of the original creditor in collection accounts has led to "numerous other lawsuits filed against Equifax." *Clarke v. Equifax Information Services, LLC*, No. 8:25-cv-01499, ECF No. 20, fn. 1 (M.D. Fla. Oct. 1, 2025) (citing *Aguirre v. Equifax Info. Services LLC*, 0:25-cv-61099 (S.D. Fla. June 3, 2025); *Williams El v. Equifax Info. Services LLC*, No. 8:25-cv-01930 (D. Md. June 16, 2025); *Madaris v. Equifax Info. Servs. LLC et al.*, No. 1:25-cv-00503 (S.D. Ohio June 17, 2025).

59. And based on a review of PACER for cases filed against Equifax, consumers have been suing Equifax for failing to disclose the original creditor for several years now.

60. Considering Equifax has not corrected this error after being sued by consumers for many years, the costs of litigating these lawsuits for Equifax have not been sufficient enough to deter it from violating the FCRA.

61. Therefore, a substantial punitive damages award is in tow to be levied against Equifax so that it is deterred from violating the FCRA in the future.

62. As a result of Equifax's conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: deprived of important information, hampered ability to correct errors in her report, cost and time to search for the

---

[1] https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx

withheld information, frustration and anxiety, feelings of fear, feelings of worry, embarrassment and humiliation, and other emotional and mental distress.

63. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

64. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendant Equifax in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT III**
**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681i**

65. The CRAs violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation and delete information that was not verified as accurate and complete.

66. The CRAs violated 15 U.S.C. § 1681i by failing to review and consider all relevant information included in Plaintiff's disputes.

67. The CRAs violated 15 U.S.C. § 1681i by failing to provide proper and sufficient notice of Plaintiff's disputes to the furnishers of information disputed by the Plaintiff.

68. The CRAs violated 15 U.S.C. § 1681i by failing to promptly delete or modify the disputed information that was found to be inaccurate, incomplete or unverifiable.

69. The CRAs violated 15 U.S.C. § 1681i by failing to clearly note disputed accounts as disputed by Plaintiff and failing to add and/or include Plaintiff's statement of dispute or a clear and accurate codification or summary thereof.

70. As a result of the CRAs' violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages, including but not limited to: harm to her credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and

tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

71. The CRAs' failure to comply with 15 U.S.C. § 1681i is due to their decision to prioritize making substantial profits over complying with their duties under the FCRA.

72. Consequently, the CRAs have implemented policies and procedures that are not adequate to comply with their duties under the FCRA.

73. The CRAs have performed a cost-benefit analysis of complying with the FCRA and determined implementing policies and procedures that comply with the FCRA is more expensive than litigating lawsuits for their failures to comply with the FCRA.

74. The CRAs have purposely adopted incorrect interpretations of the FCRA when developing their policies and procedures for complying with the FCRA because they decided that the costs of complying with the FCRA will be too costly to their profit ambitions.

75. The CRAs have ignored the opinion and holdings of the Circuit Courts of Appeals because the CRAs would lose profits if they adhered to those opinions and holdings.

76. The CRAs are extremely profitable and are some of the most profitable companies in the United States, if not the entire world. If the CRAs were not overly obsessed with making substantial profits, they could easily budget money and allocate sufficient resources that are necessary and adequate to comply with their statutory duties under the FCRA.

77. The CRAs' actions were intentional or reckless, both which amount to a willful violation, rendering the CRAs liable pursuant to 15 U.S.C. § 1681n. Alternatively, the CRAs were negligent, which entitled Plaintiff to recover under 15 U.S.C. § 1681o.

78. As a result of CRAs' violations, Plaintiff suffered actual damages, including but not limited to: pecuniary expenses and costs, damage to credit profile and financial reputation, loss of credit opportunities, emotional distress and feelings of physical sickness.

79. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants pursuant to 15 U.S.C. §§ 1681n and 1681o. The violations by the CRAs were willful, rendering them liable for punitive damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

80. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from the CRAs in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT IV**
**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681s-2(b)(1)**

81. Defendants Capital One and PRA (collectively, the "Furnishers") are required to investigate consumer disputes that are conveyed to them by the CRAs, and to take corrective action to modify or delete disputed information that is inaccurate, incomplete or unverifiable.

82. The Furnishers violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation of Plaintiff's dispute(s).

83. The Furnishers violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided when the CRAs forwarded Plaintiff's dispute(s) to them.

84. The Furnishers violated 15 U.S.C. § 1681s-2(b)(1)(C)-(D) by failing to report back to the CRAs what information was discovered or could have been uncovered upon a reasonable investigation of Plaintiff's dispute(s).

85. The Furnishers violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to promptly delete or modify the disputed information—that was found to be inaccurate, incomplete or unverifiable—upon a lawful investigation and prevent that disputed information from re-reporting to Plaintiff's credit files with the CRAs.

86. As a result of Defendant Furnishers' violations of 15 U.S.C. § 1681s-2(b)(1), Plaintiff suffered actual damages, including but not limited to: harm to her credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

87. The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

88. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from the Defendants in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT V**
**VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692e**

89. Defendant PRA violated 15 U.S.C. § 1692e by falsely representing Plaintiff owed a debt that she did not owe.

90. Defendant PRA violated 15 U.S.C. § 1692e by reporting that Plaintiff owed it for a debt that PRA knew it did not own.

91. Defendant PRA violated 15 U.S.C. § 1692e by mischaracterizing the collection as a credit account when reporting the debt to Equifax.

92. As a result of Defendant PRA's violations of 15 U.S.C. § 1692e, Plaintiff suffered actual damages, including but not limited to pecuniary expenses and costs, damage to credit profile and financial reputation, loss of credit opportunities, emotional distress and feelings of physical sickness.

93. Plaintiff is entitled to recover actual and statutory damages, costs and attorney's fees from Defendant PRA in an amount to be determined at trial pursuant to 15 U.S.C. §§ 1692k(a)(1), 1692k(a)(2)(A), and 1692k(a)(3).

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against all Defendants; for her fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

Dated: August 20, 2026

**Johnson Consumer Law PLLC**

By: */s/ Brian E. Johnson*
Brian E. Johnson (VSB No. 92815)
40716 Keesling Farm Lane
Lovettsville, VA 20180
P: 540.518.8953
F: 540.985.4365
brian@johnsonconsumerlaw.com
**Counsel for Plaintiff**